UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ISRAEL SPIRA,

                Plaintiff,

-against-

TRANSUNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SERVICES, INC., and LOANCARE, LLC,

                Defendants.

23-cv-4319 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Israel Spira ("Plaintiff") initiated this action on May 24, 2023 against Defendants TransUnion, LLC, Equifax Information Services, LLC, Experian Information Solutions, Inc. (collectively, the "CRA Defendants") and LoanCare, LLC[1] ("LoanCare") under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq*. Plaintiff alleges that his credit report was inaccurate because LoanCare, his mortgage servicer, improperly failed to accept mortgage payments from him and reported a 60-day delinquency to the CRA Defendants.

      Presently before the Court is the CRA Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Defendants' Motion for Judgment on the Pleadings is granted.

---

[1] Plaintiff and LoanCare notified the Court that they reached a settlement in principle on October 24, 2023. (ECF No. 54.) Plaintiff thereafter voluntarily dismissed LoanCare from the action by stipulation dated November 20, 2023. (ECF No. 50.)

1

## BACKGROUND

The following facts are derived from the Complaint ("Compl." ECF No. 1), unless otherwise noted, and are taken as true and construed in the light most favorable to the Plaintiff at this stage.[2]

Plaintiff set up autopay on his account with LoanCare to make automatic monthly payments towards his mortgage. (Compl. ¶ 18.) Because of financial hardship from the COVID-19 pandemic, Plaintiff applied for and was granted forbearance from his mortgage servicer. (*Id.* ¶¶ 19-20.) About a year after his forbearance program ended, Plaintiff applied for relief from the New York Homeowners Assistance Fund ("NYS HAF").[3] (*Id.* ¶ 21.) In October 2022, LoanCare did not apply Plaintiff's monthly payment to his account, and instead marked it as "unapplied" for the month of October. (*Id.* ¶ 23.) When Plaintiff inquired about the unapplied payment, LoanCare advised Plaintiff that his October 2022 payment was not applied because New York State had contacted LoanCare about his NYS HAF application. (*Id.* ¶¶ 24-25.) LoanCare had decided to hold Plaintiff's October 2022 payment while his NYS HAF application was pending. (*Id.* ¶ 26.) On November 22, 2022, LoanCare, on its own accord, applied Plaintiff's October 2022 payment to the month of October. (*Id.* ¶ 27.)

Plaintiff continued to make automatic payments to his account and never instructed LoanCare to place his payments on hold. Regardless, LoanCare "did not take" his automatic payments for November 2022 or December 2022. (*Id.* ¶ 28.) In his dispute letters to LoanCare and the CRA Defendants, Plaintiff stated his "November and December payments were not drafted by

---

[2] The Court also considers those documents incorporated by reference into the Complaint. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 421 (2d Cir. 2011) ("A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.") (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).
[3] "The [NYS HAF] is a federally funded program dedicating to assisting homeowners who are at risk of default, foreclosure, or displacement because of a financial hardship caused by the COVID-19 pandemic." *See* https://www.nyhomeownerfund.org/.

2

the bank, even though [he] never request[ed] this and [his] autopay was still set up." (ECF No. 60-1.) In December 2022, Plaintiff's NYS HAF application was denied, and he immediately requested a review of his application, which was granted. (*Id.* ¶¶ 30-31.) Plaintiff advised LoanCare of the pending review of his application, and LoanCare told Plaintiff that his account would be updated accordingly. (*Id.* ¶ 34.) Without giving notice to Plaintiff, LoanCare marked his account 60 days late in January 2023. (*Id.* ¶ 36.) When he became aware of the deficiency, Plaintiff immediately contacted LoanCare to process the payments to make his account current. (*Id.* ¶ 38.) On January 31, 2023, Plaintiff paid three months of outstanding mortgage payments for November 2022 through January 2023. (*Id.* ¶ 39.)

Plaintiff alleges that "upon information and belief," LoanCare placed Plaintiff's account on hold pending the results of the review of his NYS HAF application. (*Id.* ¶ 35.) Plaintiff further alleges that LoanCare furnished inaccurate information—that Plaintiff was 60-days late on his mortgage payments—to the CRA Defendants, who then published the inaccurate information. (*Id.* ¶¶ 41-44.) Plaintiff claims that in marking him 60-days late on his credit reports, LoanCare and the CRA Defendants "[gave] the false impression to potential lenders that Plaintiff missed two monthly payments on his mortgage." (*Id.* ¶ 44.)

On August 29, 2023, the CRA Defendants sought leave to file a motion for judgment on the pleadings, which Plaintiff opposed. (ECF No. 40, 42.) With leave of the Court, the parties fully briefed the instant motion on December 21, 2023: the CRA Defendants' Motion for Judgment on the Pleadings (ECF No. 59); their Memorandum of Law in Support (ECF No. 60, "Defs. Mem."); their Reply (ECF No. 63, "Defs. Reply"); and Plaintiff's Opposition (ECF No. 62, (Pl. Opp."). On March 22, 2024, the CRA Defendants filed a notice of supplemental authority. (ECF No. 68.) On

3

March 26, 2024, Plaintiff filed a notice of supplemental authority (ECF No. 69) to which the CRA Defendants filed a response on March 27, 2024 (ECF No. 70).

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P.12(c). When deciding motions under 12(c), courts "employ [] the same…standard applicable to dismissals pursuant to Rule 12(b)(6)." *L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419,429 (2d Cir. 2011) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)) (quotation marks omitted).

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

Plaintiff alleges that the CRA Defendants willfully and negligently violated Sections 1681e(b) and 1681i(a) of the FCRA by failing to "ensure maximum accuracy" and remove inaccuracies in Plaintiff's credit file. (Compl. ¶¶ 70-83.) The CRA Defendants assert two grounds for dismissal of Plaintiff's Complaint: (1) Plaintiff fails to allege a cognizable inaccuracy because the status of his debt is not objectively and readily verifiable and (2) their reporting was accurate because Plaintiff was 60 days late in making his mortgage payments. (Defs. Mem. at 6.)

**I.   "Inaccuracy" under the FCRA**

    A.  *Applicable Legal Standard*

Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.SC. §1681e(b). If the individual disputes the accuracy of any information appearing on a report, the consumer reporting agency must notify the entity that furnished the disputed information. § 1681i(a)(2). Then, under Section 1681i(a)(1)(A), the consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 § 1681i(a)(1)(A). Consumer reporting agencies that negligently or willfully violate these provisions are subject to civil liability. *DiGianni v. Stern's*, 26 F.3d 346, 348 (2d Cir. 1994) (citing 15 U.S.C. §§ 1681n, 1681o).

As a threshold matter, a plaintiff must allege an inaccuracy to state a claim under either Section 1681e(b) or 1681i. *Id.* "[I]f the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Gross v. Priv. Nat'l Mortg. Acceptance Co., LLC*, 512 F. Supp. 3d 423, 426 (E.D.N.Y. 2021) (citation omitted). A credit report is inaccurate "when it is patently incorrect or when it is misleading in such a way and to

such an extent that it can be expected to have an adverse effect." *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021) (citations omitted).

The Second Circuit considered what constitutes an actionable "inaccuracy" under the FCRA in *Mader v. Experian Info. Sols., Inc.*, 6 F.4th 264, 270 (2d Cir. 2023) and *Sessa v. TransUnion, LLC*, 74 F.4th 38, 42 (2d Cir. 2023). In *Mader*, a consumer sued a consumer reporting agency under the FCRA alleging that his credit report was inaccurate because it included student-loan debt that he claimed had been discharged in bankruptcy. 56 F.4th at 265. In concluding that Mader failed to allege a cognizable inaccuracy, the Second Circuit held that "accuracy" under the FCRA "requires a focus on objectively and readily verifiable information." *Id.* at 269. Therefore, "inaccuracies that turn on legal disputes"—such as whether an educational loan was dischargeable in bankruptcy—"are not cognizable under the FCRA." *Id.* at 270. In *Sessa*, the Second Circuit clarified its holding in *Mader* and observed: "[t]he question of whether a debt is objectively and readily verifiable will *sometimes*, as it did in *Mader*, involve an inquiry into whether the debt is the subject of a legal dispute." *Sessa*, 74 F.4th at 43. The threshold question is not whether any purportedly inaccurate information is legal or factual in nature, but rather whether the information in dispute is "objectively and readily verifiable." *Id.*

  B. Application

The CRA Defendants primarily place their arguments for dismissal within the framework of *Mader* and *Sessa*. The Court finds these arguments misplaced, however. In *Sessa*, the Second Circuit considered whether a vehicle lease contained a balloon payment, and therefore whether Plaintiff was required to pay a debt. *Sessa*, 74 F.4th at 43, n.7 ("The statement on Sessa's credit report that she owed a balloon payment was . . . factually inaccurate."). Similarly, in *Mader*, the alleged inaccuracy hinged on whether the plaintiff's educational loan was dischargeable in

6

bankruptcy, and therefore whether the debt was valid. *Mader*, 56 F.4th at 270 (finding plaintiff's debt was not cognizable under the FCRA because "the post-bankruptcy validity of [his] debt" was not "sufficiently objectively verifiable").

Here, the alleged inaccuracy within Plaintiff's credit report does not hinge on unresolved legal questions or the application of law to facts. The parties do not contest the validity of the debt, the amount of the debt, or whether Plaintiff made timely payments towards the debt. Per the factual allegations in his Complaint, Plaintiff acknowledges that his payments were not applied to his mortgage debt. (AC ¶ 37.) Plaintiff had to contact LoanCare to process his payments and he "paid three months of outstanding mortgage payments" on January 31, 2023. (*Id.* ¶ 39.) Moreover, in his dispute letters to the CRA Defendants, Plaintiff states that LoanCare had not even drafted the payments from his account. (*See* Defs. Mem., Ex. 1.) This is reflected in Plaintiff's Complaint—he states that LoanCare "did not take payments" from him for November or December 2022. (AC ¶ 28.) Accordingly, the crux of Plaintiff's argument is that the deficiency should not have been reported because it was not his fault that his mortgage went unpaid—LoanCare failed to process his payments. (*See* Pl. Opp. at 2.) Whether LoanCare should have accepted the payments is an entirely separate question as to whether they did, and therefore whether Plaintiff's report accurately reflected that his mortgage payments were deficient.

The Eastern District of New York Court's holding in *Hossain* is illustrative. In that case, while the court held that the question of whether the statute of limitations had elapsed was not a cognizable inaccuracy, the Court also determined that Plaintiff's credit report was not inaccurate or materially misleading. *Hossain v. Portfolio Recovery Assocs., LLC*, No. 22-CV-5124(DLI)(MMH), 2023 WL 6155974, at *4 (E.D.N.Y. Sept. 21, 2023). The court reasoned that New York state statute of limitations law did not "extinguish the underlying liability" or "affect

7

the existence of the obligation itself." *Id.* Accordingly, a plaintiff fails to assert a cognizable claim under the FCRA where he does not dispute the "factual accuracy of the size or existence of the debt itself." *Id.* That is the case here. Plaintiff's debt unquestionably existed as reported on his credit report and it unquestionably went unpaid. Therefore, Plaintiff's FCRA claim must be dismissed for failure to plead the existence of an inaccuracy. *See Tuttobene v. Trans Union, LLC*, No. 219CV01999APGNJK, 2021 WL 2188232, at *2 (D. Nev. May 28, 2021) ("A CRA thus does not violate § 1681i(a) by accurately reporting a late payment even if the consumer has a good explanation for why the payment was late.").

Plaintiff's arguments are unpersuasive. First, the cases cited by Plaintiff—*Pittman*, *Hauge*, *Abukhodeir*, and *Shaunfield*—are distinguishable as they all involve a consumer filing suit against a *furnisher* instead of a consumer reporting agency. *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-39 (6th Cir. 2018) (suit brought against mortgage servicer); *Hauge v. AmeriHome Mortg. Co., LLC*, 565 F. Supp. 3d 1, *6-8 (D. Mass. 2021) (same); *Abukhodeir v. AmeriHome Mortg. Co., LLC*, No. 8:21-CV-563-WFJ-JSS, 2021 WL 3510814, at *3-5 (M.D. Fla. Aug. 10, 2021) (same); *Shaunfield v. MB Fin. Bank, N.A.*, No. 3:15-CV-0856-L, 2016 WL 631928, at *3-4 (N.D. Tex. Feb. 17, 2016) (same). *Mileva*, cited by Plaintiff in support of his argument that the CRA Defendants' reporting was "materially misleading," also fails to support his argument.[4] (Pl. Opp. at 22-23.) That case specifically arose in the context of a loan modification and related payments, which *Pittman* held "constitutes incomplete reporting." *Mileva v. Trans Union, LLC*,

---

[4] In *Mileva*, the Illinois district court denied Equifax, the relevant consumer reporting agency, summary judgment on the grounds that a triable issue of fact existed as to whether Plaintiff's credit report reflected partial mortgage payments. *Mileva*, 2021 WL 1172704, at *7. This triable issue of fact, however, arose from Equifax having submitted into the record an Automated Consumer Dispute Verification as opposed to Plaintiff's credit report. *Id.* at *3. Therefore, the district court denied summary judgment because a triable issue of fact existed as to whether Plaintiff's credit report was inaccurate as a result of Equifax's failure to report the partial mortgage payments the mortgage servicer had reported to Equifax.

No. 20-CV-123, 2021 WL 1172704, at *5 (N.D. Ill. Mar. 29, 2021). This case does not involve a mortgage modification or partial plan payments.

Plaintiff also argues that marking his payments late under these circumstances "does not accurately reflect Plaintiff's willingness and ability to pay, key indicia of creditworthiness and the driver behind the accuracy requirement of the FCRA." (Pl. Opp. at 21.) The Court does not necessarily disagree and is sympathetic to Plaintiff's position. However, this is insufficient to plead his credit report was "materially misleading." *Braun v. Trans Union LLC*, No. CV 19-06098-CJC(SKX), 2019 WL 13083348, at *3 (C.D. Cal. Oct. 10, 2019) ("Plaintiff's payment was unquestionably late; she merely disputes that the lateness was not her fault. This is not sufficient to plead a 'materially misleading' statement on her credit report.") (citations omitted).

As noted above, Plaintiff primarily disputes whether LoanCare had the right or the obligation to hold his mortgage payments and allow the debt to go unpaid. Plaintiff thus consistently frames his arguments in terms of "fault." (Pl. Opp. at 20 (reporting the 60-day delinquency on the Account "suggests a degree of culpability that is absent from this case" as "the fault resides not with Plaintiff . . . but with LoanCare.").) Culpability and fault, however, is simply irrelevant in answering the threshold question at issue—whether the CRA Defendants reported an inaccuracy. Regardless of his good faith, Plaintiff's payments were not applied to his mortgage, and his debt went unpaid for 60 days. Those are the facts LoanCare reported to the CRA Defendants and that Plaintiff represented to them in his dispute letters. The CRA Defendants therefore accurately reported the deficiency on his mortgage debt.

For reasons not made clear, LoanCare stopped accepting Plaintiff's payments while his NYS HAF application was pending. Despite Plaintiff's disagreement with that decision, the CRA Defendants were "not in a position to adjudicate that dispute between a consumer and a furnisher

9

of information." *Tuttobene*, 2021 WL 2188232 at *2. LoanCare's reasons for not processing Plaintiff's mortgage payments did not change the fact that Plaintiff did not timely make payments on his mortgage debt. The CRA Defendants' failure to expound on an otherwise accurate report entry "is not the type of misleading omission sufficient to constitute an inaccuracy under the FCRA." *Braun*, 2019 WL 13083348, at *2.

Plaintiff's dispute therefore lies with LoanCare and not the CRA Defendants. *See Mader*, 56 F.4th at 271 (plaintiff could dispute the derogatory note with the furnisher, which knew the underlying facts better than anyone else and was itself under an FCRA obligation to report accurately to consumer reporting agencies). As Plaintiff and LoanCare have reached a settlement regarding his claims, there is no additional remedy for the Court to provide. To the extent Plaintiff would like to address the purported misrepresentation of his willingness and ability to pay, Plaintiff "may file a brief statement setting forth the nature of the dispute." *See* 15 U.S.C. § 1681i(b).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' Motion for Judgment on the Pleadings. Plaintiff's Complaint is dismissed with prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 59, to terminate the action, and to enter judgment in favor of Defendants TransUnion, LLC, Equifax Information Services, LLC, Experian Information Solutions, Inc.

Dated:   May 16, 2024　　　　　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge